IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| MONA VIE, LLC, a Delaware limited liability company,<br><br>Plaintiff,<br><br>vs.<br><br>FVA VENTURES, INC. dba VISALUS SCIENCES, a California corporation,<br><br>Defendant. | MEMORANDUM DECISION AND ORDER GRANTING DEFENDANT'S MOTION TO DISMISS COUNTS ONE AND TWO OF THE COMPLAINT<br><br><br><br>Case No. 2:12-CV-152 TS |

This matter is before the Court on Defendant's Motion to Dismiss Counts One and Two of the Complaint. Because the Court finds that both claims are preempted by the Utah Trade Secrets Act ("UTSA"), the Court will grant the Motion.

I.  BACKGROUND

Plaintiff MonaVie, LLC ("MonaVie") and Defendant FVA Ventures, Inc. dba ViSalus Sciences ("ViSalus") are competitors in the network marketing business. Both sell health supplement products through independent contractors, commonly called distributors.

Distributors earn commission based on the volume of products they sell. In addition, both companies pay commission to distributors based on the volume of products sold by each distributor's "downline." A "downline" consists of persons who are recruited by a distributor, who then recruits other distributors, and so forth, to sell the company's product.

MonaVie collects and maintains contact and other information of its distributors (the "Distributor Information") in a tangible and electronic format at its headquarters in Utah. MonaVie contends that the Distributor Information is a trade secret under the Utah Trade Secret Act.

In its Complaint, MonaVie alleges, upon information and belief, that "ViSalus has developed a strategy for recruiting distributors that specifically targets MonaVie distributors."[1] MonaVie alleges that MonaVie distributors who have left MonaVie and joined ViSalus have taken the Distributor Information from MonaVie and exploited it for ViSalus. MonaVie further alleges that ViSalus has, in turn, given or sold MonaVie's Distributor Information to a professional recruiting company called Career Investments. Career Investments is alleged to have used the Distributor Information obtained from ViSalus and/or distributors of ViSalus to identify and solicit MonaVie distributors.

MonaVie brings claims for conversion, intentional interference with economic relations, and misappropriation of trade secrets. ViSalus seeks dismissal of Plaintiff's conversion and intentional interference claims.

---

[1] Docket No. 1, Ex. A, ¶ 26.

## II.  STANDARD OF REVIEW

In considering a motion to dismiss under Rule 12(b)(6), all well-pleaded factual allegations, as distinguished from conclusory allegations, are accepted as true and viewed in the light most favorable to Plaintiff as the nonmoving party.[2]  Plaintiff must provide "enough facts to state a claim to relief that is plausible on its face."[3]  All well-pleaded factual allegations in the complaint are accepted as true and viewed in the light most favorable to the nonmoving party.[4]  But, the court "need not accept . . . conclusory allegations without supporting factual averments."[5]  "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted."[6]

In considering the adequacy of a plaintiff's allegations in a complaint subject to a motion

---

[2] *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997).

[3] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007).

[4] *GFF Corp.*, 130 F.3d at 1384.

[5] *S. Disposal, Inc., v. Tex. Waste*, 161 F.3d 1259, 1262 (10th Cir. 1998); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

[6] *Miller v. Glanz*, 948 F.2d 1562, 1565 (10th Cir. 1991).

to dismiss, a district court not only considers the complaint, but also "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."[7] Thus, "notwithstanding the usual rule that a court should consider no evidence beyond the pleadings on a Rule 12(b)(6) motion to dismiss, '[a] district court may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity.'"[8]

### III.  DISCUSSION

ViSalus seeks dismissal of MonaVie's claims for conversion and intentional interference with economic relations.  ViSalus argues that MonaVie's Complaint fails to state a claim on each of these causes of action.  ViSalus also argues that these claims are preempted by the Utah Trade Secrets Act.  Because the Court agrees that the claims are preempted, the Court will limit its discussion to that issue.

The Utah Trade Secret Act "displaces conflicting tort, restitutionary, and other law of this state providing civil remedies for misappropriation of a trade secret."[9]  However, it does not affect "other civil remedies that are not based upon a misappropriation of a trade secret."[10]

---

[7]*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) (citing 5B WRIGHT & MILLER § 1357 (3d ed. 2004 & Supp. 2007)).

[8]*Alvarado v. KOB-TV, LLC*, 493 F.3d 1210, 1215 (10th Cir. 2007) (quoting *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002)).

[9]Utah Code Ann. § 13-24-8(1).

[10]*Id*. § 13-24-8(2)(b).

Recently, the Utah Court of Appeals embraced the majority view in holding that the Utah Trade Secret Act "preempts claims based on the unauthorized use of information, irrespective of whether that information meets the statutory definition of a trade secret."[11]  In *CDC Restoration*, the Utah Court of Appeals provided an analytical approach for determining whether claims are preempted by the UTSA.  The court stated "that a preliminary examination of the facts underlying the non-UTSA claim is necessary to determine whether a claim is preempted."[12]

After reviewing those facts, the question then becomes how those facts affect preemption. The Utah Court of Appeals held "that a claim is preempted to the extent that it is based on factual allegations supporting a misappropriation of trade secrets or otherwise confidential information."[13]

> Under this standard, if proof of a non-UTSA claim would also simultaneously establish a claim for misappropriation of trade secrets, it is preempted irrespective o[f] whatever surplus elements of proof were necessary to establish it.  However, to whatever extent that a claim is based upon wrongful conduct independent of the misappropriation of trade secrets or otherwise confidential information, it is not preempted.[14]

With this standard in mind, the Court considers MonaVie's claims for conversion and intentional interference with economic relations.

---

[11] *CDC Restoration & Constr., LC v. Tradesmen Contractors, LLC*, 274 P.3d 317, 330 (Utah Ct. App. 2012).

[12] *Id*.

[13] *Id*. at 331

[14] *Id*. (quotation marks and citations omitted).

A.     CONVERSION

"Conversion is an act of wilful interference with a chattel, done without lawful justification by which the person entitled thereto is deprived of its use and possession."[15]

The substantive paragraphs of MonaVie's claim for conversion are as follows:

> 63.  ViSalus has willfully obstructed MonaVie's ownership and use of the Distributor Information.
> 64.  ViSalus has used and exploited MonaVie's Distributor Information without permission or knowledge.
> 65.  ViSalus has used and exploited MonaVie's Distributor Information without legal justification.
> 66.  ViSalus has exercised dominion or control over MonaVie's Distributor Information in a manner inconsistent with MonaVie's rights of ownership of those lists.
> 67.  ViSalus's use of the Distributor Information contained in MonaVie's confidential distributor list has deprived MonaVie of the Possession and use of the Information.
> 68.  ViSalus's use of the Distributor Information contained in MonaVie's confidential distributor lists has damaged MonaVie in an amount to be determined at trial.[16]

As can be seen, all of the allegations used to support MonaVie's conversion claim are based solely on the misappropriation and/or misuse of MonaVie's Distributor Information.  As stated, the Utah Court of Appeals has held "that a claim is preempted to the extent that it is based on factual allegations supporting a misappropriation of trade secrets or otherwise confidential information."[17]  Because MonaVie's conversion claim is based on factual allegations supporting

---

[15]*Phillips v. Utah State Credit Union*, 811 P.2d 174, 179 (Utah 1991) (citation omitted).

[16]Docket No. 1, Ex. A, ¶¶ 63-68.

[17]*CDC Restoration*, 274 P.3d at 331.

a misappropriation of trade secrets or otherwise confidential information, this claim is preempted by the UTSA.

MonaVie argues that its conversion claim should not be dismissed because it can plead conversion as an alternative to its trade secret claim and that ViSalus's claim of preemption is premature because the Court has yet to determine that the Distributor Information is a trade secret. This argument, however, would require the Court to adopt the minority view of UTSA preemption that the Utah Court of Appeals rejected in *CDC Restoration*. As stated, the court in *CDC Restoration* held that the Utah Trade Secret Act "preempts claims based on the unauthorized use of information, irrespective of whether that information meets the statutory definition of a trade secret."[18] Thus, MonaVie's argument that the Motion to Dismiss is premature is without merit and the Court declines to follow those cases which embrace the minority view. The UTSA preempts claims based on the unauthorized use of information and the Court need not determine whether that information constitutes a trade secret before determining whether it is preempted. Therefore, MonaVie's conversion claim will be dismissed.

B.     INTENTIONAL INTERFERENCE WITH ECONOMIC RELATIONS

In *Leigh Furniture and Carpet Co. v. Isom*,[19] the Utah Supreme Court set forth a three-prong test required to prove this tort: "(1) that the defendant intentionally interfered with

---

[18]*Id*. at 330.

[19]657 P.2d 293 (Utah 1982).

the plaintiff's existing or potential economic relations, (2) for an improper purpose or by improper means, (3) causing injury to the plaintiff."[20]

In its Motion, ViSalus argues that it has not interfered with existing economic relations, but concedes that MonaVie's allegations are sufficient to satisfy the first prong of the *Leigh Furniture* test as to its prospective economic relations.[21] As a result, the Court turns to the issue of the improper purpose or means.

MonaVie's complaint states in a conclusory fashion that "ViSalus has interfered with existing and prospective MonaVie business relationships for an improper purpose and/or by improper means."[22] In its opposition, MonaVie argues that it has properly pleaded improper means. Specifically, MonaVie points to ViSalus's "misappropriation of MonaVie's Distributor Information."[23] Because this claim is based on ViSalus's alleged misappropriation of MonaVie's confidential information, it is preempted by the UTSA for the same reasons as MonaVie's conversion claim. Therefore, MonaVie's allegations on this ground fail.

MonaVie also argues that improper means can be shown through its allegations that "ViSalus and current and former MonaVie distributors conspired to interfere with MonaVie's business by inducing other distributors to breach their non-solicit and non-disclosure covenants

---

[20]*Id*. at 304.

[21]Docket No. 7 at 10.

[22]Docket No. 1, Ex. A, ¶ 75.

[23]Docket No. 11 at 13.

8

with MonaVie."[24] However, in examining the Complaint, it is clear that this alleged conspiracy was formed as a result of the former MonaVie distributors taking the Distributor Information and giving it to ViSalus so that ViSalus could use and exploit that information to its benefit. Thus, MonaVie's intentional interference claim is premised on the alleged use of its confidential information by ViSalus. Therefore, this claim is preempted by the UTSA and must be dismissed.

To the extent that the Court can separate those allegations that are based upon the Distributor Information and those that are not, MonaVie has failed to sufficiently allege improper means. As stated, MonaVie argues that ViSalus and current and former MonaVie distributors have conspired to induce other distributors to breach certain agreements with MonaVie.

The Utah Supreme Court has held that "[a] deliberate breach of contract, even where employed to secure economic advantage, is not, by itself, an 'improper means.'"[25] However, "breach of contract committed for the immediate purpose of injuring the other contracting party is an improper means that will satisfy this element of the cause of action for intentional interference with economic relations."[26] Plaintiff's Complaint contains only the conclusory allegations that ViSalus engaged in this conduct "with the intent of interfering with MonaVie's business."[27] Such conclusory allegations are insufficient to withstand a motion to dismiss under

---

[24]*Id*. at 14-15.

[25]*Leigh Furniture*, 657 P.2d at 309.

[26]*Id*.

[27]Docket No. 1, Ex. A, ¶ 77.

the standard set forth above.  The only substantive claims on this issue relate back to the use of Distributor Information, making them preempted.  Therefore, this claim must be dismissed.

## IV.  CONCLUSION

It is therefore

ORDERED that Defendant's Motion to Dismiss Counts One and Two of the Complaint (Docket No. 6) is GRANTED.

DATED   May 30, 2012.

BY THE COURT:

_____
TED STEWART
United States District Judge